IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:18-CR-345 |
| v. ) | |
| ) | The Honorable Liam O'Grady |
| DAVID EDWARD DE VERE, ) | |
| ) | Sentencing: February 8, 2019 |
| *Defendant*. ) | |
| ) | |

## **POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

In July 2017, the parents of a teenage boy living in Colorado discovered a string of verbally abusive and sexually explicit messages to their son from an adult—later identified as the defendant, David Edward De Vere of Woodbridge, Virginia—on their son's phone. These messages described the defendant's desire to drug, rape, and have other men rape their son, and indicated that the defendant had travelled to Colorado in April of that year to act on those desires. Fortunately, the minor feigned an illness when the defendant went to Colorado and the two never met. Additional investigation, however, revealed that the defendant had coerced the minor to take and send him sexually explicit images of himself and had instructed another man with physical access to the minor to "train" him so that the minor could become the defendant's sexual "slave" after he graduated from high school.

The defendant pleaded guilty pursuant to a plea agreement to one count of production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e), which carries a mandatory minimum term of imprisonment of fifteen years and a maximum term of thirty years. In the Presentence Investigation Report, the United States Probation Office correctly calculated the applicable Sentencing Guidelines range to be 180–210 months of imprisonment. For the reasons

below, the United States submits that a sentence within this Guidelines range is appropriate here.

The United States further requests that the Court impose at least ten years of supervised release, a mandatory $100 special assessment, and a $5,000 special assessment under the Justice for Victims of Trafficking Act, and require that the defendant pay restitution.  If an agreed-upon restitution amount cannot be reached at the time of sentencing, the United States requests that the Court set a hearing for a later date, before which the United States will either submit an agreed-upon, proposed restitution order or file briefing in support of a reasonable restitution request.

## BACKGROUND

On September 27, 2018, the defendant pleaded guilty to one count of production of child pornography,[1] in violation of 18 U.S.C. § 2251(a) and (e).  The defendant also stipulated to having engaged in the conduct described in the Statement of Facts, [Dkt. 28], summarized below.

### I.     The Defendant Has the Minor Victim Produce and Send him Child Pornography

On March 26, 2017, the defendant, then fifty-one years old, began communicating with the minor victim, then sixteen years old, via email after meeting him on a social networking site. Presentence Investigation Report [Dkt. 33] ("PSR") ¶ 8.  From the outset, the defendant used sexually demeaning and abusive language in his emails to the minor, encouraging the minor to identify as his "slave" and "property."  PSR ¶¶ 8–10.  He also insisted that the minor take and send him pictures of the minor "torturing" his genitals as a form of humiliation.  PSR ¶ 11.  When the minor expressed confusion as to the type of images the defendant wanted, the defendant instructed the minor to "crush[]" his genitals with his hands to cause nausea-inducing pain and asked for

---

[1] For purposes of this filing, the term "child pornography" will refer to any visual depiction of a minor engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256.

pictures of the minor's face, body, and genitals. PSR ¶ 13. In response, the minor told the defendant that he was only sixteen years old. PSR ¶ 15.

Undeterred, the defendant explained that he still wished to "own/claim" the minor and act as his "sadistic" and "brutal" master. PSR ¶ 16. Indeed, after learning the minor's age, the defendant again insisted on March 27, 2017, that the minor send him images of his body, face, and genitals, and instructed him to "torture and abuse" his genitals. PSR ¶ 17. The minor sent the defendant an email containing five nude images of himself either posing in a way that exposes his genitals or inserting his fingers into his anus. PSR ¶ 18. The minor then sent the defendant another email containing five different nude images, including one in which the minor is tightly squeezing his genitals. PSR ¶ 21. After receiving these images, the defendant told the minor that he wanted him to wear items associated with bondage and sadomasochistic sex acts, including a "chastity device" that would compress the minor's genitals and a device that the minor would insert into his anus. PSR ¶ 23. The defendant also told the minor that he would purchase one of these items for him if he continued to comply with his demands. *Id.*

On March 28, 2018, the minor sent the defendant another email containing five nude images of himself, including two in which the minor is tightly squeezing his genitals. PSR ¶ 24. The minor also told the defendant that he would pay the defendant back for the devices if the defendant could deliver them to his parent's home in Colorado without his parents finding out. PSR ¶ 26. After learning that the minor lived in Colorado, the defendant offered to travel there to give him one of the devices in person. PSR ¶ 27. The next day, the defendant informed the minor that he was arranging to travel to Colorado "to use and train" the minor. *Id.*

**II.     The Defendant Instructs Another Adult to Sexually Abuse the Minor Victim**

While communicating with the minor victim, the defendant began simultaneously communicating with an adult—later identified as Ryan Charles McCraw—about the minor. McCraw, like the defendant, met the minor online. PSR ¶ 29. Unlike the defendant, however, McCraw lived close enough to the minor to easily meet him in person. *Id.* After discussing their shared sexual interest in the minor, the defendant encouraged McCraw to "train" and "use" the minor, hopeful that McCraw would be able to "mold" him "into the perfect focused, devoted slave" by the time he graduated from high school. PSR ¶¶ 30, 32. The defendant instructed the minor to allow McCraw to, among other things, insert an object into his anus, place a "chastity device" around his genitals, and put a collar on him. PSR ¶ 30. The minor informed the defendant on March 31, 2017, that he intended to meet McCraw in person the next day. PSR ¶ 31. The defendant later learned that the minor and McCraw engaged in sexual activity together, and that McCraw gave the minor a "chastity device" to compress his genitals. *Id.*

**III.    The Defendant Flies to Colorado to Engage in Sexual Conduct with the Minor Victim**

The defendant continued to communicate with the minor in April 2017. He repeatedly told the minor that he intended to fly to Colorado on April 21, 2017, and expressed a desire to drug the minor, rape him, and have other men rape him. PSR ¶ 33. The defendant told the minor that he had reserved a room at a hotel near the minor's home and had a friend in the area who would rape the minor. PSR ¶¶ 33–34. On the day of the defendant's scheduled arrival, the minor feigned an illness and told the defendant via email that he would be unable to meet him. PSR ¶ 35. The defendant responded that he would still fly to Colorado to visit a friend and that he still wanted to "inspect/train/use" the minor. *Id.* The defendant then flew to Colorado that day, staying at the hotel he had previously identified and travelling back to Virginia a few days later. *Id.*

**IV. The Defendant's Attempts to Acquire Other Minor Victims to Sexually Abuse**

While the defendant and the minor stopped communicating not long after the failed meeting, the defendant continued to communicate online with and about individuals he believed to be children. Specifically, in March and April of 2017, the defendant exchanged emails with an individual claiming to be an adult seeking to sell their eleven-year-old son for several thousand dollars. PSR ¶ 41. The defendant negotiated the terms and logistics of the sale, receiving three photographs of a minor boy who appears to be about eleven-years-old and explaining to the individual that he intended to hold the child captive as his slave. *Id.* The defendant proposed that they complete the transaction at a specified location near the defendant's home, but the individual later informed the defendant that someone else had purchased the child. PSR ¶ 42.

In May 2017, the defendant began communicating online with an individual who claimed to be a different adult seeking to sell their eleven-year-old son for $4,000. PSR ¶ 43. The defendant told this individual that he wanted to purchase, rape, and physically abuse the child. The defendant also exchanged several emails with someone who he understood to be the eleven-year-old boy. PSR ¶¶ 43–44. The defendant told the child that he was an athletic recruiter at a school in Virginia and asked the child to send him pictures of himself. PSR ¶ 44. In response, the defendant received several images of what appears to be a shirtless boy. *Id.* After agreeing to bring the child to a specified location near the defendant's home, the individual offering to sell the child stopped responding to the defendant's attempts to complete the transaction. PSR ¶ 45.

## SENTENCING ANALYSIS

To determine the appropriate sentence for this offense, the Court must consult both the United States Sentencing Guidelines (the "Guidelines") and the factors in 18 U.S.C. § 3553(a). Although they are advisory, "a sentencing court is still required to 'consult [the] Guidelines and

take them into account when sentencing.'" *United States v. Clark*, 434 F.3d 684, 685 (4th Cir. 2006) (quoting *United States v. Booker*, 542 U.S. 220, 264 (2005)). Thus, a sentencing court must first calculate the applicable Guidelines range after making the appropriate findings of fact. *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). Relying on that Guidelines range as "the starting point and the initial benchmark," the sentencing court must then "consider all of the § 3553(a) factors" before imposing a sentence. *Gall v. United States*, 552 U.S. 38, 49–50 (2007).

I. **The Applicable Sentencing Guidelines**

In the PSR, the United States Probation Office calculated the total offense level as follows:

| **Guideline** | |
|---|---|
| Base offense level (U.S.S.G. § 2G2.1(a)) | 32 |
| Offense involved material that portrays sadistic or masochistic conduct or other depictions of violence (U.S.S.G. § 2G2.1(b)(4)(A)) | +4 |
| Offense involved the use of a computer to solicit participation by a minor in sexually explicit conduct (U.S.S.G. § 2G2.1(b)(6)(B)(ii)) | +2 |
| Acceptance of responsibility (U.S.S.G. § 3E1.1) | -3 |
| **TOTAL OFFENSE LEVEL** | **35** |

PSR ¶¶ 53–63.

As reflected in this calculation, the parties agreed that the defendant assisted in his own prosecution and that the United States will move for a reduction in the defendant's offense level under U.S.S.G. § 3E1.1 if he qualifies. PSR ¶ 3(b). Finding that he does, the United States now moves for a three-point downward adjustment to the defendant's offense under U.S.S.G. § 3E1.1.

The United States did not take a position in the Plea Agreement on the application of the enhancement for material portraying sadistic, masochistic, or other violent conduct under U.S.S.G. § 2G2.1(b)(6)(B)(ii), but, having reviewed the PSR, agrees that it applies. The term sadistic conduct as used in the Guidelines covers "acts involving infliction of pain upon a love object as a means of obtaining sexual release, delight in physical or mental cruelty, or excessive cruelty."

6

*United States v. Johnson*, 680 F. App'x 194, 197–98 (4th Cir. 2017) (internal citations and quotation marks omitted). Depictions of sadistic conduct, however, do not have to be violent or cause the victim pain, and can include images that appear to portray "purposefully degrading and humiliating sexual gratification that causes mental suffering or psychological or emotional injury in the victim[.]" *Id.* at 198 (internal citations and quotation marks omitted); *United States v. Lee*, 321 F. App'x 298, 301 (4th Cir. 2009) (applying enhancement where the minor "does not appear to be in pain" but the use of a leather strap "and the placement of the boy's hands behind his back— an unusual position for someone to place his unbound hands—give rise to an inference that the boy's hands are bound"). Here, the images of the minor tightly squeezing his genitals in his hand— an entirely unnatural way to position oneself—portray conduct that an outside observer could only perceive as designed to inflict "physical pain, emotional suffering, or humiliation on" the minor. *United States v. Corp*, 668 F.3d 379, 389–90 (6th Cir. 2012). And, indeed, as a result of complying with the defendant's demands to provide him with these painful and humiliating images, the minor experienced emotional trauma. PSR ¶¶ 13–24; *see also* [Dkt. 33-2] at 1. Based on the above, this enhancement plainly applies.

The United States further agrees that the defendant is in Criminal History Category I, resulting in a Guidelines range of 165–210 months of imprisonment. PSR ¶ 94. When, as here, the mandatory minimum sentence is greater than the minimum of the applicable Guidelines range, the mandatory minimum sentence becomes the low end of the Guidelines range. U.S.S.G. § 5G1.1(c). Accordingly, the applicable Guidelines range here is 180–210 months. PSR ¶ 94.

**II.     Sentencing Factors**

After calculating the Guidelines range, a sentencing court must consider that range and the sentencing factors set forth in § 3553(a) to determine an appropriate sentence. *Nelson*, 555 U.S.

at 351. These factors include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, provide just punishment, and protect the public from the defendant; and the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a).

The Court must also determine the appropriate term of supervised release at sentencing. "Supervised release . . . is not a punishment in lieu of incarceration." *United States v. Granderson*, 511 U.S. 39, 50 (1994). Instead, it "fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000). Under 18 U.S.C. § 3583(k), the authorized term of supervised release here is at least five years and up to life. This five-year mandatory minimum term reflects a heightened concern for recidivism among sex offenders and the need for supervision over time. *See* H.R. Rep. No. 107–527 at 2 (2002) ("[S]tudies have shown that sex offenders are four times more likely than other violent criminals to recommit their crimes [and that] . . . the recidivism rates do not appreciably decline as offenders age"); H.R. Conf. Rep. No. 108-66 at 49–50 (2003). When crafting a term supervised release, the Court should consider the nature and circumstances of the offense, the defendant's history and characteristics, and the need for deterrence, among other factors. 18 U.S.C. § 3583(c).

Based on an assessment of these factors, the United States respectfully recommends that the Court impose term of imprisonment within the 180–210 month Guidelines range and at least ten years of supervised release with the conditions of supervision contemplated under 18 U.S.C. § 3583(d) and U.S.S.G. § 5D1.3(d)(7) for sex offenders required to register under the Sex Offender Registration and Notification Act.

### A. The Nature and Circumstances of the Offense and the Need for the Sentence to Reflect the Seriousness of the Offense

To begin, child pornography crimes are grievous offenses that warrant significant sanctions. *See United States v. Morace*, 594 F.3d 340, 350 (4th Cir. 2010) (citing a 2003 legislative enactment as "ample evidence of Congress's intent that offenses involving child pornography be treated severely" (internal quotations and citation omitted)). Over the last four decades, Congress has "mandated increasingly severe sanctions" for the crime of production of child pornography in particular, reflecting the "profoundly serious" nature of the offense and the harm it causes its victims. *United States v. Polk*, 546 F.3d 74, 77 (1st Cir. 2008). After all, the images produced during the commission of this offense "are 'a permanent record of the children's participation'" in unlawful sexual conduct, *United States v. Burgess*, 684 F.3d 445, 459 (4th Cir. 2012) (quoting *New York v. Ferber*, 458 U.S. 747, 759 (1982)), and the knowledge that such an indelible record of their sexual abuse exists "causes the child victims continuing harm by haunting the children in years to come." *Osborne v. Ohio*, 495 U.S. 103, 11 (1990).

To exacerbate matters, the nature and circumstances of the defendant's conduct encompass more than the production of child pornography. The defendant targeted the minor victim here and used abusive, coercive language to get the minor to take and send the defendant degrading and sexually explicit images of himself over the Internet. He also instructed the minor to wear a device intended to compress his genitals and to insert an object into his anus. More troublingly, the defendant encouraged another adult to do what, at the time, he could not: sexually abuse the minor in person. The goal of this criminal conduct, as the defendant himself made clear, was to inure the minor victim—who the defendant knew was a sixteen-year-old high school student living with his parents—to this abusive treatment so that he, too, could one day engage in unlawful sexual conduct with the minor in person. And, indeed, after about a month of interacting with the minor online,

the defendant set out to do just that, travelling from Virginia to Colorado with the stated purpose of sexually abusing the minor. Despite his best efforts, the defendant never met the minor in person, though the harm he caused continues to reverberate.

Should there be any doubt, the statements submitted by the minor victim and his parents detail the damage that the defendant's criminal conduct caused. The minor victim writes that his interactions with the defendant left him feeling "worthless, less than human, and insignificant." [Dkt. 33-2] at 1. The defendant's predatory conduct, the minor victim continues, impacted his entire family, and left him haunted by the possibility of what could have happened. *Id.* Likewise, the minor's parents describe the defendant's conduct as "cruel," "disgusting," and "heartbreaking." *Id.* at 2. They explain that the defendant's tactic of coercing the minor victim through degrading language caused deep and lasting harm that has required the minor victim to enter into "aggressive therapy" to begin the process of regaining his sense of self-worth. *Id.* The government thus believes that a significant sentence consistent with the Guidelines is warranted here.

      **B.      The History and Characteristics of the Defendant and the Need to for the Sentence to Protect the Public from Further Crimes of the Defendant**

The history and characteristics of the defendant are similarly troubling. Though he has no significant criminal history and has maintained employment, the defendant engaged in a course of conduct that reflects a startling lack of empathy for the minor victim and a deep sexual interest in inflicting physical and emotional pain on minors. His decision to encourage another adult to sexually abuse the minor victim and, indeed, to provide the minor with instructions on the sexual conduct in which he should engage with this adult, placed the minor in acute danger. Further, his willingness to expend the resources to travel a significant distance on short notice—within about a month of the minor revealing that he lived in Colorado with his parents—underscores the depth of the defendant's sexual interest in minors and his desire to act on that interest.

10

Finally, as noted above, at around the same time as his interactions with the minor, the defendant at least twice attempted to purchase even younger boys to sexually abuse for thousands of dollars from other individuals. In his interactions with these individuals, the defendant solicited pictures of the purported minors, interacted with at least one individual he believed to be a minor that he was purchasing, and specified a location near his home where the transactions could occur. Moreover, the defendant's descriptions of the violent sexual conduct that he intended to engage in with these minors reveal that his behavior with the minor victim in Colorado was not an aberration. Instead, that conduct—that is, inducing the minor to take and send him sexually explicit images, encouraging another adult to engage in sexually explicit conduct with the minor, and then attempting to meet the minor in person to engage in sexually explicit conduct with him—is evidence of his larger infatuation with the physical, emotional, and sexual abuse of minors.

### C. The Need to Avoid Unwarranted Sentence Disparities

Courts around the country routinely impose lengthy sentences for criminal defendants found guilty of producing child pornography via the Internet.[2] So too do courts in this District.[3]

---

[2] *See, e.g.,* Judgment, [Dkt. 131], *United States v. Gillespie*, 1:15-CR-209 (W.D.N.Y. Sept. 18, 2018) (sentencing defendant who sent sexually explicit messages to a minor and induced her to send him a nude image to seventeen years' imprisonment and eight years of supervised release); Judgment, [Dkt. 59], *United States v. Gutierrez*, 2:15-CR-131 (E.D. Wash. Aug. 24, 2016) (sentencing defendant who impersonated a minor online to induce minor girls to take and send him nude images to twenty-seven years' imprisonment and a lifetime of supervised release).

[3] *See* Judgment, [Dkt. 40], *United States v. Moody*, 1:18-CR-170-LO (E.D. Va. Oct. 12, 2018) (sentencing defendant to thirty years' imprisonment and a lifetime of supervised release); Judgment, [Dkt. 88], *United States v. Stinson*, 1:17-CR-211-LO (E.D. Va. Aug. 24, 2018) (sentencing defendant who paid adults to sexually abuse minors on webcams to twenty years' imprisonment and ten years' supervised release); Judgment, [Dkt. 42], *United State v. Frederiksen*, 1:16-CR-96-GBL (E.D. Va. Nov. 10, 2016) (sentencing defendant who induced minors to send child pornography over the Internet to twenty years' imprisonment and twenty years' supervised release); Judgment, [Dkt. 122], *United States v. Battle*, 1:18-CR-274-CMH (E.D. Va. June 14, 2016) (sentencing defendant who impersonated a minor to induce other minors to send child pornography to twenty-five years' imprisonment and fifteen years' supervised release).

Considering the extent of the defendant's conduct and his interactions with the minor victim, the instant case should not be an exception to this trend. Accordingly, the United States believes that a term of imprisonment within the Guidelines range of 180–210 months followed by at least ten years of supervised release is an appropriate sentence here.

### III.  Mandatory Special Assessment Under the Justice for Victims of Trafficking Act

Based on the description of the defendant's financial condition, PSR ¶¶ 91–92, the Court should find that the defendant is not indigent and order him to pay a $5,000 special assessment under the Justice for Victims of Trafficking Act, 18 U.S.C. § 3014. This law imposes a mandatory assessment of $5,000 on any non-indigent defendant convicted of certain enumerated offenses, including production of child pornography. *See* 18 U.S.C. § 3014(a)(3). This assessment is payable after the defendant has satisfied all outstanding court-ordered fines, orders of restitution, and any other obligation related to victim compensation. *See id.* at § 3014(b).

### IV.  Restitution

Pursuant to the Plea Agreement, *see* PSR ¶ 3, and 18 U.S.C. § 2259, the defendant is required to pay restitution in the "full amount" of losses caused to his victims.[4] Under 18 U.S.C. § 2259 (1996), the defendant is required to pay the "full amount of the victim's losses." In *Paroline v. United States*, 572 U.S. 434, 448 (2014), the Supreme Court clarified that "[r]estitution is . . .

---

[4] Victims of child-pornography offenses receive restitution under 18 U.S.C. § 2259. The statute requires restitution for the "full amount of the victim's losses," including "(A) medical services relating to physical, psychiatric, or psychological care; (B) physical and occupational therapy or rehabilitation; (C) necessary transportation, temporary housing, and child care expenses; (D) lost income; (E) attorneys' fees, as well as other costs incurred; and (F) any other losses suffered by the victim as a proximate result of the offense. 18 U.S.C. § 2259(b)(3) (1996). The statutory scheme under which these victims can seek restitution was modified in December 2018, but the statute instructs courts to apply the scheme that was in effect at the time of the offense. 18 U.S.C. § 2259B(d).

proper under § 2259 only to the extent that the defendant's offense proximately caused a victim's losses."[5]

The government bears the burden of proving the victims' losses by a preponderance of the evidence. 18 U.S.C. § 3664(e). "Absolute precision is not required" when calculating restitution. *United States v. Burdi*, 414 F.3d 216, 221 (1st Cir. 2005). Instead, the Court must "attempt to come to a 'reasonable determination of appropriate restitution by resolving uncertainties with a view towards achieving fairness to the victim.'" *Burdi*, 414 F.3d at 221 (quoting *United States v. Vankin*, 112 F.3d 579, 587 (1st Cir. 1997)). The evidence on which the Court can rely in determining restitution may come from many sources, including hearsay that "bears minimal indicia of reliability" and that the defendant has had an opportunity to refute. *Johnson*, 680 F. App'x at 200 (internal quotations and citations omitted). In seeking restitution, the government may also "rely upon information found in a defendant's presentence report unless the defendant affirmatively shows that such information is inaccurate or unreliable." *United States v. Delmonte*, 444 F. App'x 695, 697–98 (4th Cir. 2011) (citing *United States v. Gilliam*, 987 F.2d 1009, 1013 (4th Cir. 1993)).

Due to the complexity of the restitution issues involved with this case, the defendant specifically waived in the Plea Agreement the requirement in 18 U.S.C. § 3664(d)(5) that the Court determine a final restitution amount no later than ninety days after sentencing. Absent an agreed-upon restitution amount at the time sentencing, the United States requests that the Court not render

---

[5] The Supreme Court's decision in *Paroline* largely addressed issues not present here. In *Paroline*, 572 U.S. at 449–62, the Court grappled with the difficult task of determining and apportioning the amount of restitution in a case where the defendant only possessed images of the victim. Here, the defendant produced the images of the victim in question. There is therefore no need in this case to disaggregate the losses caused by the initial production of child pornography and those losses caused by any subsequent distribution and possession of those images.

13

a judgment of restitution and instead retain jurisdiction over it and set a hearing for a later date to address the issue. In advance of that hearing, the United States will either submit an agreed-upon, proposed restitution order or submit briefing in support of a reasonable restitution request.

## CONCLUSION

Over the course of a month, the defendant subjected a minor to a series of escalating degradations and abuses designed to prime the minor to engage in sexual conduct with the defendant. He first used abusive language to induce the minor victim to take and send him debasing and sexually explicit images over the Internet, then encouraged another adult to sexually abuse the minor in person, and finally travelled thousands of miles with the hopes of sexually abusing the minor victim himself. In recognition of the harm caused by the defendant's conduct and the danger he poses, the United States respectfully requests that the Court impose a sentence within the Guidelines range of 180–210 months, at least ten years of supervised release, a mandatory $100 special assessment, and a $5,000 special assessment under the Justice for Victims of Trafficking Act, and require that the defendant pay reasonable restitution.

Respectfully Submitted,

G. Zachary Terwilliger
United States Attorney

By: ___/s/_____
William G. Clayman
Special Assistant United States Attorney (LT)
Kellen S. Dwyer
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on February 1, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing ("NEF") to counsel of record in this case.

           Respectfully submitted,

           G. Zachary Terwilliger
           United States Attorney

By:     /s/
           William G. Clayman
           Special Assistant United States Attorney (LT)
           United States Attorney's Office
           Eastern District of Virginia
           2100 Jamieson Avenue
           Alexandria, VA 22314
           Phone: (703) 299-3700
           Fax: (703) 299-3980
           Email: william.g.clayman@usdoj.gov