IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>DAVID DE VERE,<br>*Defendant*. | Defendant's Position on Sentencing<br><br>The Honorable Judge Liam O'Grady<br><br>February 8, 2019<br><br>Docket No. 1:18CR00345-001 |

## DEFENDANT'S POSITION ON SENTENCING

COMES NOW the Defendant David De Vere, by and through counsel, and provides this Court with his position regarding his advisory sentencing guidelines range and the sentencing factors articulated in 18 U.S.C. §3553(a). Mr. De Vere has received and reviewed the Pre-sentence Investigation Report and the Addendum to that Report that includes the victim impact statements of the minor victim and his parents. He has offered a correction to the Probation Officer concerning the PSIR's recitation of Offender Characteristics at Paragraph 75, where the year when Mr. De Vere's father suffered a nervous breakdown should be 1992, not 1997, and at Paragraph 76, where the amount of the purchase of Mr. De Vere's residence should reflect $690,000 not $890,000.

United States v. Booker, 125 S. Ct. 738 (2005) and its progeny require district courts to consider all of the factors contained in §3553(a) when calculating a Defendant's ultimate sentence. This memorandum presents Mr. De Vere's position as to what would constitute a

sentence "sufficient, but not greater than necessary" to comply with the purposes of punishment as described in §3553(a)(2).

Mr. De Vere urges the Court to determine that the appropriate calculation of the guidelines does not include a finding that the offense involved material that portrays sadistic or masochistic conduct or depictions of violence pursuant to §2G2.1(b)(4)(A), and that the resulting offense level computation results in a total offense level of 31 and not 35. Mr. De Vere would further urge the Court to find that the mandatory minimum sentence of 15 years is appropriate in this case, which would be above the guidelines range if the Court adopts the Defendant's argument regarding §2G2.1(b)(4)(A), but would be the low end of the guidelines range if the Court declines to accept the Defendant's argument in this regard. In support of his request for the Court to impose a sentence of the mandatory minimum of 15 years, Mr. De Vere offers the following:

FACTUAL BACKGROUND

On July 23, 2018 federal agents arrested David De Vere on a federal arrest warrant. On August 7, 2018 Mr. De Vere appeared before Magistrate Judge Buchanan for a Preliminary Hearing and Detention Review. The Court found probable cause and retained Mr. De Vere in detention. On September 27, 2018 after the Court accepted his waiver of indictment, the Defendant plead guilty to a one-count Criminal Information charging Production of Child Pornography in violation of 18 U.S.C. § 2251(a) and (e). The Court set sentencing in the matter to January 11, 2019 and continued that sentencing hearing to February 8, 2019 by agreement of the parties. Mr. De Vere has been continuously detained since his arrest on July 23, 2018.

GENERAL ARGUMENT:

History and Characteristics of the Defendant:

David Edward De Vere is 53 years old. He graduated with Honors from the University of California, Santa Cruz with a Bachelor of Art's degree in English Literature and American History in 1988, and he received a Master of Arts degree in English Literature from the University of Washington, Seattle in 1990.

From 1990 until 2001, Mr. De Vere returned to his childhood home to care for his ill and aging parents. His mother suffered from depression, an unspecified personality disorder and diabetes, along with various complications from that diabetes, which caused her death in 1999. His father suffered from Parkinson's disease, and complications from that progressive disease led to his death in 2001. Mr. De Vere remained steadfast in his care for his parents during this 11 year period, effectively putting his own life on hold in spite of his achievement of a Masters Degree and his relative youth.

Many of Mr. De Vere's friends provided character letters on his behalf. They speak of someone who is a good friend, "unfailingly kind, sensitive and supportive" and a "rare combination: wise and knowledgeable enough to speak deeply about almost anything, while also being an interested, involved and sympathetic listener." (Letter of Elizabeth Iwamiya) They uniformly admire his perseverance in creating a life in spite of his hardships: "I believe one of Dave's greatest strengths in his ability and determination to overcome personal hardship" and in caring for his parents through their illnesses and death: "[h]e selflessly took care of them even at the expense of advancing his own career. During the entire time he cared for his parents, Dave

never complained about the personal sacrifices he made but always remained positive and optimistic." (Letter of Jon Chin).

Most of the letters reference Mr. De Vere's sexual interests but emphasize the adults-only nature of the interest: "He never once expressed or showed any interest in anything other than consenting relationship with other adults." (Letter of Kenneth Davis) They uniformly are shocked and saddened at the offense Mr. De Vere committed and how the person they know could have made this mistake: "It's difficult to square the caring, genuine, giving, and gentle person I've known for two decades with his crimes. In all the time I've known him I never once saw or sensed a shred of malice in him. Nothing under-handed, evil, harmful, or destructive. Instead, I saw a kind-hearted man who'd been dealt a difficult hand in life, one who tried as hard as he could to have a normal life. Awkward, sometimes naive, lonely—but never ill-intentioned." (Letter of Kenneth Davis)

Even knowing about the offense, they all continue to love him and worry about him: "I just want you to know the David that I know and have known for 33 years. A kind, decent, loyal, generous, caring friend. My best friend. He will always be that to me." (Letter of Lisa Kroll) Every one of them are deeply concerned about his health in the jail: "My main concern right now is his eyesight. I worry he will go completely blind in prison. I am also deeply concerned for his safety. His eyesight plus his unusual looks will make him a target. I truly hope David will be sent to a medical prison, specially[sic] Devins. My husband Ken Davis…and I are 45 minutes away." (Letter of Lisa Kroll)

Mr. De Vere himself suffers from a congenital disease called Aniridia. This is a hereditary condition that he shares with several other members of his extended family. Persons with

Aniridia are born without irises in their eyes. The condition carries with it limited vision and often blindness, along with symptoms that vary from irritating to debilitating, painful and disabling. Mr. De Vere has been treated for this condition since childhood, including having had several surgeries to alleviate symptoms and attempt to preserve some of his eyesight.

He currently is completely blind in his left eye and has roughly 50% vision in his right eye. He depends on a regimen of medicinal eye drops both to control the degeneration of his eyes further into blindness and also to control the pressure that leads to severe pain when left untreated for even a day. Mr. De Vere's treating physicians agree that he will need to continue with the monitoring of his condition 3-4 times per year, management of his medication treatment regimen, and eventually additional surgeries to avoid blindness and debilitating, disabling pain and further degeneration of his eyes. Medical records from several of Mr. De Vere's treating physicians are included as attachments to this Defense Position on Sentencing.

As of the time of his sentencing, three of the four drops Mr. De Vere uses to control the pressure, dryness and degeneration of his eyes were not available within the Alexandria ADC. One prescription is available only from a private compounding pharmacy and not from any commercial pharmacies. Mr. De Vere has arranged to pay out of pocket for these medications from a pharmacy near his home, and since the lapse in his private health insurance subsequent to the loss of his job, the cost of these medications runs roughly $500 per month. On at least one occasion, when a generic version of one prescription was provided by the medical staff of the Adult Detention Center, Mr. De Vere experienced debilitating pain and intense pressure in his eyes until the non-generic version could be obtained and delivered to the ADC two days later. Mr. De Vere will never be relieved of the need for these medications to control his condition and

its symptoms, and he expects to continue paying for some or all of the medications, given the relative uniqueness of his condition and the difficulty obtaining the medications while confined in the setting of detention.

The specialization in Aniridia is rare in the field of opthamology, with fewer than six doctors nationwide considered expert in the management of the disease. Mr. De Vere's condition is only stable with regular monitoring by specialists, and with regular daily administration of very specific medications that need adjustment on a periodic basis. Without this management, Mr. De Vere's conditions is fragile and subject to very rapid degeneration.

In addition to the congenital disease afflicting his eyes, Mr. De Vere also has suffered from depression and anxiety for much of his adult life, for which he has received counseling and occasionally medication off and on for many years. He does not use drugs other than those prescribed for him and uses alcohol only very occasionally.

Mr. De Vere has no prior criminal history. Until the arrest for these offenses, he worked consistently and with distinction as an Equal Employment Opportunity Specialist at jobs with the Environmental Protection Agency and the Patent and Trade Office for the past 11 years.

2. Nature and Circumstances of the Offense:

Mr. De Vere is an adult gay male who has had an interest in BDSM (defined variously as bondage, discipline/dominance, submission/sadism/slave, master/masochism) for most of his adult life. With the publication in 2013 of the Diagnostic and Statistical Manual, 5th Edition (DSM5), paraphilia interests, including an interest in BDSM, are no longer inherently pathologized, i.e., the medical community no longer considers simply an interest in or the practice of BDSM a mental illness. This change parallels the removal of homosexuality as a

mental illness in the DSM3 in 1973.  In short, like homosexuality, an interest in BDSM, within certain parameters, is now considered by mental health professionals to be a normal variation of human behavior, not a pathology or mental illness.

Mr. De Vere's interaction within the BDSM community, until his relationship with the victim in this case, have always been conducted with fully consenting adults, with accepted safeguards in place to ensure the consensual nature of the encounters. He has never sought out interaction with minors in the past and has declined to interact with them when he encountered them online in the past.

It is important to note that federal agents seized Mr. De Vere's electronic devices in the course of this case and found no evidence of child pornography beyond those pictures, cited in the PSIR, that depicted the victim. Mr. De Vere engaged in Master/Slave fantasies online, as evidenced in the Relevant Conduct recited in the Statement of Facts and in the PSIR statement of offense, but the individuals involved in these exchanges were adults, and the "children" referenced as potential slaves did not exist. The fantasies themselves appear bizarre and frankly horrifying if they existed as real-world intentions, but they are not uncommon areas of fantasy play for consenting adults within this community. There is no intention to actually physically enact the subject of these fantasies, although it can be hard for non-BDSM-familiar people to grasp the nature of this fantasizing. This is the online sexual community in which Mr. De Vere has participated for many years, completely legally and with only consenting partners.

Similarly, the exchange of rough, violent and degrading language is common within the portion of the BDSM community that engages in age play and Master/Slave fantasizing. As was true in this case, the humiliating and degrading suggestions are made mutually by the parties.

They are just as often raised by the "Slave" partner and not by the "Master", again as is true in this case (See Statement of Facts at 27).  Mr. De Vere engaged in this interaction with the victim, believing that the victim was consensually engaging and at times leading the fantasizing within the norm of the community. There was no intention of carrying through with violent or humiliating conduct without the consent of the partner, again the norm within the community. Indeed, the victim's ongoing voluntary interaction with Mr. De Vere led Mr. De Vere to believe that they were engaged in a consensual fantasy relationship within this community, including a consensual agreement to meet in person.

Obviously, the fatal mistake Mr. De Vere made here, and which he recognizes make his activities clearly illegal, is the fact that he knew that the victim had identified himself as 16 years old, and therefore out-of-bonds as a consensual partner. As he confirmed himself in his acceptance of responsibility, he failed to follow the rules of the BDSM community by disengaging when his partner was a minor and unable to legally consent to the interaction.

Mr. De Vere's history and personal characteristics do not absolve him of the terrible harm he has caused, but they do point to relevant considerations for the Court in determining an appropriate defendant-specific sentence. Most relevant, there is a temporal limit to the criminal conduct of the Defendant. Throughout his life, Mr. De Vere appears to have been uniformly a kind, caring, compassionate person. He has had an unusual but not dis-functional interest in BDSM throughout his adult life. He has scrupulously stayed within the norms and boundaries of appropriate conduct within the BDSM community until his interactions with the victim in this case. As he said in his acceptance of responsibility, he knew better than to interact with a minor in this way, and his gross failure in this regard has led to the destruction of the life that he

worked very carefully to construct despite his disability, history of depression and anxiety, and his social awkwardness. The commission of this offense has caused terrible harm to the victim, but it is not the hallmark of Mr. De Vere's life, based on all the evidence available. His offense against the victim is truly an aberration from the first three decades of his adult life.

### ARGUMENT AS TO §2G2.1(b)(4)(A)

The finding that Mr. De Vere's offense involves material that portrays sadistic and masochistic conduct or depictions of violence is misplaced in the unique context of the facts of this case. *United States v. Johnson*, 680 Fed. Appx. 194 (2017), cited by the probation officer is inapposite. That case involved the defendant and a prepubescent victim engaging in sexual conduct, and the Court there found that "[w]here pornographic images portray the sexual penetration of prepubescent children, courts consistently find the images 'inherently sadistic' because they depict sexual acts that are 'likely to cause pain in one so young.'" *Id.* at 198. The victim in this case is 16 years of age, an age at which many young men are voluntarily sexually active. There is no physical contact between Mr. De Vere and the victim, and the pictures described do not rise to the level of a depiction of violence.

The fact that the *Johnson* case did not involve individuals involved in the practice of BDSM further removes the standard articulated there from the facts at issue here. The context of this case is important, because while the victim's age clearly minimizes his ability to consent, he did initiate many of the graphic conversations in which he and Mr. De Vere engaged. To be completely clear—this absolutely does not bear on the illegality of the act or the harm to the victim. However, since the DMS5 has normalized and de-pathologized the practice of BDSM, it is no longer the case that using demeaning and degrading language, or fantasizing about Master/

Slave contact, automatically equates to harm for the participants. At the time Mr. De Vere engaged in the conversations with the victim, the intent was not harm, but sexual play and gratification, for both parties. The victim clearly was harmed by his contact with Mr. De Vere, but their contact is not of the kind that was envisioned in the enactment of this portion of the Federal Sentencing Guidelines that makes sadistic or masochistic conduct worthy of additional punishment.

<u>The sentence imposed should afford adequate deterrence to criminal conduct and protect the public from further crimes of the Defendant</u>

      David De Vere's congenital eye disease of Aniridia and his mental health conditions evidenced by his long-time counseling record indicate that a lengthy sentence is unnecessary as a deterrence to future criminal conduct by Mr. De Vere. Mr. De Vere's condition limits his physical abilities and must be regularly addressed with appropriate medical interventions. There is extensive evidence of his character described in the passionate character letters of his friends that show he he is unlikely to engage in this behavior in the future.

      Beyond that, Mr. De Vere is currently 53 years old. Recidivism rates decline relatively consistently as age increases. See U.S. Sentencing Commission, Measuring Recidivism: the Criminal History Computation of the Federal Sentencing Guidelines, A Component of the Fifteen Year Report on the U.S. Sentencing Commission's Legislative Mandate (May 2004.) In addition, all of the letters of support written on behalf of Mr. De Vere assure the Court that these colleagues and friends continue to love Mr. De Vere and stand ready to provide support to the Defendant both during his incarceration and upon his release, further indicating that a

sentence in excess of 15 years is far greater than would be necessary to assure the goal of community safety.

### Providing the defendant with needed medical care

As noted in the PSIR and in the medical records provided , Mr. De Vere suffers from a congenital disease that is difficult to manage and that is expected to become progressively worse over time. As he ages, his condition is likely to deteriorate, with the result that a sentence in excess of 15 years may result in his condition becoming unmanageable in an institutional environment.

### The need to provide restitution to victims of the offense

Mr. De Vere is committed to paying appropriate restitution to his victim. As a result, he has executed an agreed order for restitution and is taking steps to liquify assets that will allow payment to the victim as quickly as possible. His desire to provide financial restitution to his victim indicates a remorse for his crime that was also echoed repeatedly in the character letters submitted to the Court.

### CONCLUSION

A sentence of 15 years is sufficient to comply with the factors set out in 18 U.S.C. §3553(a). A sentence of 15 years would reflect the seriousness of the offense, promote respect for the law, provide just punishment, and accomplish specific and general deterrence. Accordingly, Mr. De Vere respectfully requests that this Court impose a sentence of 15 years.

_____/s/_____
Tracey A. Lenox, Esq. (VSB No. 36162)

Nichols Zauzig Sandler, P.C.
12660 Lake Ridge Drive
Woodbridge, Virginia 22192
Telephone: (703) 492-4200
Facsimile: (703) 492-1701
E-Mail: tracey.lenox@gmail.com
*Counsel for the Defendant*

CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2109 I will electronically file the forgoing pleading with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to:

William G. Clayman, Esq.
US Attorney's Office (Alexandria)
2100 Jamieson Ave.
Alexandria, VA 22314
703-299-3700
William.G.Clayman@usdoj.gov

_____/s/_____
Tracey A. Lenox, Esq. (VSB No. 36162)
Nichols Zauzig Sandler, P.C.
12660 Lake Ridge Drive
Woodbridge, Virginia 22192
Telephone: (703) 492-4200
Facsimile: (703) 492-1701
E-Mail: tracey.lenox@gmail.com
*Counsel for the Defendant*